MOORE *v.* BULGREEN.

1. EASEMENTS—RIGHT OF WAY—ESTABLISHMENT—PRESCRIPTION.
   Defendant does not show a prescriptive right to cross com-
   plainant's land to reach his own, by showing that from 1888
   to 1906 he has, at intervals, crossed one or other or both of
   complainant's parcels, and that as late as 1892 he sought,
   without success, to bargain for a way, and that such use as
   he made of the land in crossing it was at that time permis-
   sive; that since that time the way has been repeatedly ob-
   structed, which obstructions he has removed.

2. ADVERSE POSSESSION—TRESPASS—ACQUISITION OF RIGHT.
   Whether repeated trespasses accompanied by violence and by
   destruction of property will ever grow into a right as by ad-
   verse possession, they cannot do so in less time than is re-
   quired to gain a right by open, notorious, hostile, and peace-
   able possession, or use.

3. EASEMENTS—RIGHT OF WAY—PRESCRIPTION—TACKING USES.
   Assuming that a way originally by permission may in some
   cases become one of right by hostile use, the period when it
   was used by permission cannot be tacked on to the period of
   hostility for the purpose of making the statute period.

4. SAME—BILL TO RESTRAIN TRESPASS—EFFECT OF ALLEGATIONS.
   An allegation in a bill to restrain the use of a claimed right of
   way that defendant "has not now, and never had any right
   of way, * * * either by prescription, license, or ease-
   ment," does not require the court to assume that from the
   beginning defendant's use of the land was adverse.

Appeal from Sanilac; Beach, J. Submitted May 4,
1908. (Docket No. 48.) Decided June 27, 1908.

Bill by Elizabeth Moore against Albert Bulgreen to re-
strain a trespass upon lands. Defendant filed an answer
in the nature of a cross-bill to quiet title. From a de-
cree for complainant, defendant appeals. Affirmed.

*Babcock Brothers*, for complainant.

*William H. Aitkin* (*Charles F. Gates*, of counsel), for defendant.

OSTRANDER, J.   Complainant owns the southwest quarter of southeast quarter of section 29, and the northwest quarter of northeast quarter of section 32, in town 12 north, of range 13 east.  She filed her bill in May, 1906, asking for a decree restraining defendant from going upon and crossing over said lands, from tearing down and removing her fences and gates.  In his answer defendant claims to own a strip from the southeast quarter of the southeast quarter of section 29 to the east 25 acres of the south half of southwest quarter of the same section, which he also owns, and he describes the strip as—

"Land two rods in width and the center line thereof commences about one rod north of the southeast corner of the southwest quarter of the southeast quarter of section 29, and goes in a southwestern direction until it gets one rod south of the section line between sections 29 and 32 in said township, then along the north side of said section 32 and within one rod of such section line until it reaches within one rod of the quarter line running north and south across said section 32, when it goes north for about seven rods to a gate maintained by this defendant for more than fifteen years."

He avers that he—

"Claims such rights by adverse possession for more than fifteen years, and that such way is clearly defined and has been in such use for more than fifteen years and no proceedings were instituted by said complainant or her grantors in law or equity within said fifteen years to deprive this defendant of said way and during all of which time the said defendant admits that he has used the same to drive his teams, vehicles, farm machinery and stock across said lands at his will and pleasure which was well known by said complainant and her grantors during said fifteen years and upwards," and also that it is a way of necessity without which "he cannot reach said twenty-five acres, which he is using under an order of the court

in a suit now pending and which cannot be reached any other way, or to go from said twenty-five acres to either the southeast quarter of the southeast quarter of section 29 or the northwest quarter of the northwest quarter of section 33 in said township."

Defendant also owns the north half of the southeast quarter of section 29, so that his land bounds complainant's north 40 acres on the east, north, and west sides. He asks for affirmative relief and for a decree declaring him to be owner of the strip of land in fee simple. In the court below it was found that defendant had no right, title, or interest in or to the land for a right of way or otherwise, and no right to cross or recross any part thereof. It is not now claimed that there is a way of necessity. If the claim should be made it could not be supported. We do not understand the theory according to which defendant can claim to own any part of the land in fee. The title deeds show that complainant owns the fee, and the testimony offered by defendant tends at most to establish an easement. It appears that defendant acquired the 25 acres of land at the western terminus of his claimed right of way in 1888, that he cleared it and later raised crops upon it, and that he has at intervals from that time to 1906 reached the land by crossing one or other or both of the complainant's parcels hereinbefore described. There is a swamp or beaver dam meadow in the southwest and west portion of the southwest quarter of the southeast quarter of section 29, extending onto adjoining property, through which a drain has now been cut. It appears to have been understood that at some time a road would be built on the section line between 29 and 32, and the highway commissioner did lay out a highway along the line. The township board, in March, 1892, reversed the action of the commissioner. Defendant contends that his way has been along a portion of the strip which would have been included in the highway if it had been laid out, and from that strip at each end thereof he has diverged to the north upon complainant's land to convenient gaps or gates in

the east and west line fences. Before the land was all cleared, defendant went over it in various ways at his convenience. At the west he sometimes, as the water permitted, crossed the swamp in one place, sometimes in another, and sometimes passed to the north of it. We need not set out the testimony at large and we are not required, complainant's title to the land having been established, to look beyond the testimony produced by defendant, for the purpose of affirming the decree of the court below. The effect of this testimony is that as late as 1892, he sought, without success, to bargain with the owner and occupant for a way across the southwest quarter of the southeast quarter or a portion of it, and that such use as he made of the land in crossing it was at that time permissive. Since that time and before the bill in this cause was filed, the way has been repeatedly obstructed, complainant has sued defendant in justice's court for trespassing, securing a judgment from which defendant has attempted to appeal to the circuit court. Defendant in his answer asserts that "he has removed all obstructions placed upon said way by complainant or anyone else and still claims the right so to do." It is true that Tank, from whom permission to cross the land on section 29 was had, did not own the land on section 32. As defendant cannot arrive at that portion of the alleged way from, and cannot leave it by passing to, his own land, it is perhaps not material to discuss or determine whether as to the alleged passageway on section 32 the testimony makes a different case. The way asserted is a single and, by description, a continuous one. Assuming it to be material, it is undisputed that since 1892, when complainant's remote grantor became owner of both of the 40-acre parcels first herein described, defendant has had neither continuing permission to cross nor peaceable enjoyment of the alleged way or of any way across the land. He has crossed the land many times in opposition to the known wishes and the express commands of the owner and his tenant. He has torn down wire fencing

erected by the owner, has rebuilt a gate in the fence, and when the fence was built across the gate he tore that down. To avoid obstructions to his use of the land, he has entered it at various places other than at the gate in the east fence—a gate originally placed there by the owner of the land for his own convenience and first used by defendant by acquiescence of the owner. Whether repeated trespasses accompanied by violence and by destruction of property will ever grow into a right as by adverse possession is a question not involved here. It is clear that it cannot do so in less time than is required to gain a right by open, notorious, hostile, and peaceable possession, or use. And assuming that a way originally by permission may in some cases become one of right by hostile use, the period when it was used by permission cannot be tacked on to the period of hostility for the purpose of making the statute period.

At the hearing, counsel strongly pressed the point that because, in the bill of complaint, it is charged that defendant "has not now, and never had any right of way across said lands of your oratrix, either by prescription, license, or easement, and that he has no right of way across said land, for any of the reasons or excuses given or claimed by him, or for any reason whatever," the court should assume that from the beginning defendant's use of the land was adverse. We think the allegation may not be read in a way which will support the argument. What is charged is that defendant has not and never had a right of way.

The decree of the circuit court is affirmed, with costs.

HOOKER, MOORE, CARPENTER, and McALVAY, JJ., concurred.